Torres, Appellee, *v.* Torres; Board of County Commissioners of Cuyahoga County et al., Appellants.

Weems, Appellee, v. Weems; Fuerst, Clerk, Appellant.

(Nos. 44310 and 45036—Decided August 26, 1982.)

*Mr. Thomas Weeks* and *Ms. Carolyn Carter,* for appellees.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Patrick Carroll,* for appellants.

Patton, P.J. This appeal is a consolidation of two cases from the Division of Domestic Relations. In case No. 44310, entitled *Torres* v. *Torres,* Mrs. Torres filed suit for divorce against her husband on the grounds that, *inter alia,* the two had lived separate and apart for two years prior to the filing of the complaint.[1] Along with her complaint, Mrs. Torres filed a poverty affidavit wherein she stated she was unemployed and received Aid to Families with Dependent Children payments of $263 per month. Service of process was attempted upon Mr. Torres in Chicago, Illinois; however, no return receipt was ever received by the court. Hence, Mrs. Torres' only alternative was to give notice to Mr. Torres by publication. R.C. 3105.06[2]; Civ. R. 4.4(A).[3] Because Mrs. Torres claimed she was indigent, she moved the court to waive pre-

---

[1] R.C. 3105.01(K) provides that the court may grant a divorce where the parties have lived separate and apart for two years. It states:

"The court of common pleas may grant divorces for the following causes:

"* * *

"(K) On the application of either party, when husband and wife have, without interruption for two years, lived separate and apart without cohabitation, and four years in the case

in which one of the parties is continually confined to a mental institution. * * *"

[2] R.C. 3105.06 states:

"If the residence of a defendant in an action for divorce, annulment, or alimony is unknown, * * * notice of the pendency of the action must be given by publication as provided by the Rules of Civil Procedure."

[3] Civ. R. 4.4(A) provides in pertinent part:

"When the residence of a defendant is unknown, service shall be made by publication in actions where such service is authorized by law. * * *"

payment of the costs necessary to cause notice of the divorce action to be published. Her motion was granted; however, no order was made regarding who was to pay the cost of publication. Mrs. Torres therefore moved to join the clerk of courts and the county commissioners on the grounds they were responsible for payment. Her motion to join was granted, and the trial court subsequently entered judgment against the new party defendants.

In case No. 45036, entitled *Weems* v. *Weems,* Mrs. Weems brought an action for divorce on the grounds that her husband had been guilty of gross neglect of duty and extreme cruelty. With her complaint, Mrs. Weems submitted an affidavit wherein she stated her sole source of income was approximately $80 per week from Aid to Families with Dependent Children, and that her sole assets consisted of equity in real estate in the amount of $1,800 and household furniture. Mrs. Weems attempted to serve her husband by certified mail but was unsuccessful. She then asked the clerk for service by publication but was told she must first deposit $50. Claiming she was indigent, Mrs. Weems filed a motion to waive prepayment of publication fees and served the motion on the clerk of courts and the county commissioners. Thereafter, the trial court granted Mrs. Weems' motion and ordered the clerk of courts to cause service of notice by publication upon Mr. Weems without requiring Mrs. Weems to prepay the cost of service.

The clerk subsequently moved to vacate on the grounds that he had not been made a party to the action and that therefore the court had no jurisdiction over him. The trial court rejected the clerk's contentions and denied his motion.

In *Torres* v. *Torres,* the clerk and the board of commissioners appealed and raise as their sole assignment of error:

"The trial court erred in granting judgment for the plaintiff solely on the basis of an affidavit."

In *Weems* v. *Weems,* only the clerk appeals. He raises the following assignment of error:

"The trial court erred by overruling the motion to vacate a judgment against the clerk of courts in a civil action in which the clerk had not been made a party."

Because both cases raise issues regarding the proper procedure to be followed by an indigent in a divorce action in obtaining prepaid service by publication, we have consolidated these cases.

At the outset, we note that there is no dispute as to whether Mrs. Torres and Mrs. Weems are entitled to a waiver of the prepayment of service by publication. The United States Supreme Court in *Boddie* v. *Connecticut* (1971), 401 U.S. 371, specifically held that where indigent divorce litigants were precluded from filing for divorce because they could not afford the filing fee and the costs for service of process, they were denied due process of law. The United States Supreme Court premised its decision upon the fact that the marriage relationship enjoys an esteemed position in our society's hierarchy of values and that the states monopolize the means for legally dissolving this relationship.

In *Monroe* v. *Monroe* (1972), 33 Ohio Misc. 223 [62 O.O.2d 370], the Court of Common Pleas of Hamilton County found that where the plaintiff in that divorce action was the recipient of public assistance and could not pay the costs of service by publication without depriving her family of the necessities of life, the decision in *Boddie* required the county to pay for the costs of service by publication.

Hence, it is clear under *Boddie* and *Monroe* that Mrs. Torres and Mrs. Weems, once determined to be indigent, were entitled to have the county prepay the costs of service by publication. However, both *Boddie* and *Monroe* left unanswered two questions presented in

the instant cases.[4] The first is: What quantum of proof is necessary to establish a litigant's indigency? The second is what are the mechanics for prepayment by the county of service by publication costs, *i.e.*, must the clerk of courts and/or county commissioners be made party defendants to the divorce action before they can be required to pay the costs?

## I
### Proof of Indigency

The first issue we will discuss is what proof is required to be given by an indigent before prepayment of service by publication will be granted.

In order to waive prepayment of a filing fee in a domestic relations matter, the court requires only that an affidavit be filed by the plaintiff alleging she is indigent. See R.C. 2323.31[5]; Sections 2 and 3 of the Poverty Affidavit Rule of the Domestic Relations Division[6]; and Rule 7(D) of the Cuyahoga County Court of Common Pleas.[7] Indeed, in both *Torres* and *Weems,* the trial court waived prepayment of the filing fee because both Mrs. Torres and Mrs. Weems had submitted poverty affidavits with the court. The rules do not, however, state whether the mere filing of a poverty affidavit is sufficient to waive prepayment of costs for service by publication.

A reading of these rules does refer to costs which may accrue during the pendency of a lawsuit. To illustrate, R.C. 2323.31 provides: "[I]f a plaintiff makes an affidavit of inability either to prepay or give security for *costs,* the clerk of the court shall receive and file the petition." (Emphasis added.) Likewise, Section 2 of the Poverty Affidavit Rule of the Domestic Relations Division provides: "The Clerk of Courts shall accept for filing a pleading if [the] same is accompanied by prescribed poverty affidavit in lieu of security for *cost* * * *." (Emphasis added.) In addition, Section 3 of the

---

[4] In *Boddie,* the court found there to be no dispute as to the inability of the plaintiffs to pay for either the filing fee or the service of process. However, it appears the trial court in that case had before it merely the affidavits of the plaintiffs which stated that their welfare income barely sufficed to meet the costs of the daily essentials of life. See *Boddie* at 374.

In *Monroe,* the court conducted a hearing on the plaintiff's motion to waive prepayment of service although the court made no indication such a hearing was required.

[5] R.C. 2323.31 provides:

"The court of common pleas by rule may require an advance deposit for the filing of any civil action or proceeding. On motion of the defendant, and if satisfied that such deposit is insufficient, the court may require it to be increased from time to time, so as to secure all costs that may accrue in the cause, or may require personal security to be given; *but if a plaintiff makes an affidavit of inability either to prepay or give security for costs, the clerk of the court shall receive and file the petition.* Such affidavit shall be filed with the petition, and treated as are similar papers in such cases." (Emphasis added.)

[6] Sections 2 and 3 of the Poverty Affidavit Rule of the Domestic Relations Division provide:

"2. The Clerk of Courts shall accept for filing a pleading if same is accompanied by [a] prescribed poverty affidavit in lieu of *security for costs* and a written statement by counsel for parties filing same that no attorney fees have been received by counsel.

"3. In those cases where the pleadings are accepted with poverty affidavits and the *security for costs* is not posted within ninety (90) days from the date of filing or prior to final hearing, whichever is the earlier date, the Court *may* dismiss the case *if it finds the party who filed the poverty affidavit is not indigent.*" (Emphasis added.)

[7] Rule 7(D) of the Cuyahoga County Court of Common Pleas states:

"(D) A poverty affidavit filed in lieu of a *cash deposit* must state the reasons for the inability to prepay *costs* and is subject to court review at any stage of the proceedings." (Emphasis added.)

Poverty Affidavit Rule of the Domestic Relations Division refers to "security for costs." Finally, Rule 7(D) of the Cuyahoga County Court of Common Pleas states: "A poverty affidavit filed in lieu of a cash deposit must state the reasons for the inability to prepay *costs* * * *." (Emphasis added.) We hold that the cost of service by publication comes within the scope of the term "costs" as it is used in these rules. Thus, like the cost of the filing fee, the cost of service by publication can be waived by the court upon the filing of a poverty affidavit by the movant.

Although we hold that the mere filing of a poverty affidavit *can* be sufficient of and in itself to effectuate a waiver of the filing fee and cost of service by publication, we do not mean to intimate that such an affidavit will operate to waive such costs in every case. Where the trial court or the clerk of courts questions the truthfulness of such an affidavit, the court, on its own motion, or the clerk, on his motion, may request an oral hearing to investigate the litigant's indigency. Our holding is in full compliance with Rule 7(D) of the Cuyahoga County Court of Common Pleas, which provides that the poverty affidavit filed to waive prepayment of costs "is subject to court review at any stage of the proceedings." See, also, Section 3 of the Poverty Affidavit Rule of the Domestic Relations Division, which states that the court may dismiss the case "if it finds the party who filed the poverty affidavit is not indigent."[8]

Other jurisdictions in implementing *Boddie* have reached basically the same conclusion as we have in the instant cases. See *Earls* v. *Superior Court* (1971), 98 Cal. Rptr. 302, 490 P. 2d 814 (holding that where petitioner filed a petition for dissolution of marriage and request to proceed *in forma pauperis,* supported by an affidavit setting forth facts indicating that she was indigent, the trial court erred in denying her motion to proceed without prepayment of filing fees. The court intimated that a hearing on a plaintiff's alleged indigency may be proper where the trial court had doubts as to the factual statements contained in the poverty affidavit); *Tolson* v. *Lane* (Ky. 1978), 569 S.W. 2d 159 (holding that where plaintiff filed an affidavit with facts supporting her alleged indigency, the trial court erred in refusing her to proceed *in forma pauperis.* The court did not discuss whether an affidavit was always legally sufficient. It merely stated that in this case, the evidence was undisputed.); *Salyers* v. *Cornett* (Ky. 1978), 566 S.W. 2d 418 (holding that the court abused its discretion in denying plaintiff's motion to proceed *in forma pauperis* where plaintiff filed an affidavit in support of her request which stated the wife was unemployed, that she had no bank account, owned no real estate or personal property, and that her only income was $135 per month from AFDC benefits used to provide necessities for herself and her infant child); *Wigginton* v. *Wigginton* (1972), 16 Md. App. 329, 295 A. 2d 889 (holding that the trial court did not abuse its discretion in denying order allowing plaintiff to waive filing fee where plaintiff refused an opportunity to explain why she was unable to pay the costs); *Miserak* v. *Terrill* (1971), 130 Vt. 7, 285 A. 2d 753 (holding that where a divorce plaintiff files· a verified petition with the clerk stating the reasons why she cannot afford

---

[8] We note that Part VI(A)(1)(c) of Rule 29 of the Cuyahoga County Court of Common Pleas also provides for judicial review of the truth of the statements in a poverty affidavit. See *Smith* v. *Klammer* (May 30, 1980), Cuy. App. No. 39624, unreported. That rule deals with an appeal from an arbitration award and clearly has no direct application to the instant cases. We find its authority to be persuasive in holding that the court may require a hearing before waiving prepayment of costs.

mandated fees and service costs, the court must conduct a hearing on the petition of indigency to determine the truth of the facts alleged therein). But, see, *Ashley v. Superior Court* (1973), 82 Wash. 2d 188, 509 P. 2d 751 (holding that although plaintiffs who made a clear showing of indigency were entitled to waive filing fees, they were not entitled to waive cost of service of the summons and complaint either personally or by publication).

## II
### The Clerk and Commissioners as Party-Defendants

We find that neither the clerk nor the commissioners were necessary or proper parties to either *Weems* or *Torres.* The clerk was under a statutory duty to follow the order of the trial court and pay for cost of service by publication. R.C. 2303.26 states:

"The clerk of the court of common pleas *shall* exercise the powers conferred and *perform the duties enjoined upon him* by statute and *by the common law; and in the performance of his duties he shall be under the direction of his court.*" (Emphasis added.)

The clerk argues, nonetheless, that in the absence of a specific statute authorizing him to pay a private publisher for service by publication, the trial court's order for him to do so compels the clerk to perform an act he has no authority to do. However, we find that the provisions of R.C. 2303.26 are sufficient to confer just such authority upon the clerk. In addition, we note that the prepayment of various court-related expenses incurred by indigents have been ordered to be paid by the county. For example, in *Anderson v. Jacobs* (1981), 68 Ohio St. 2d 67 [22 O.O.3d 268], the Ohio Supreme Court recently held that the county must prepay the costs of blood grouping tests to an indigent paternity defendant. See, also, *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6 [15 O.O.3d 3] (holding that indigent parents were entitled to be pro-

vided with counsel and a transcript at public expense in an action instituted by the state to force the permanent, involuntary termination of parental rights); *State v. Arrington* (1975), 42 Ohio St. 2d 114 [71 O.O.2d 81] (holding that the state must provide indigent criminal defendants with a transcript of proceedings when the transcript is needed for appeal).

Accordingly, for the reasons adduced above, the decisions of the trial court are affirmed.

*Judgments affirmed.*

DAY and PARRINO, JJ., concur.