GEORGE A. JOHNSON

*v.*

W. JACK STEVENS, *Circuit Judge, etc.*

(No. 14737)

Decided May 6, 1980.

*Darcy Veach* for petitioner.

*Chauncey H. Browning,* Attorney General, *Lawrence R. Frail,* Assistant Attorney General, for respondent.

CAPLAN, JUSTICE:

In this original proceeding in mandamus, the petitioner, George Johnson, seeks to compel the respondent, W. Jack Stevens, Judge of the Twenty-fifth Judicial Circuit, to permit an alternate means of service of process in his divorce action or to direct that payment for service of process by publication be made from some public fund.

We find that the due process clauses of our State and Federal Constitutions and the concept of equal protection, as embodied in Article III, Section 17 of our State Constitution, proscribe the denial of access to our courts to an indigent seeking judicial dissolution of his mar-

riage solely on the basis of financial inability to pay for service of process by publication. The writ sought is therefore awarded and we direct that the State bear the financial responsibility for the payment of publication costs in a divorce action in which the plaintiff files a poor person's affidavit.

On November 19, 1978, in the Circuit Court of Lincoln County, George Johnson instituted an action for divorce against his wife, Theresa Pugh Johnson. He alleged that they had last lived together as man and wife in Woodville, Lincoln County; that she left him and took up residence in Fulton County, Illinois; that two children were born of their marriage; and, that he sought a divorce on the grounds of irreconcilable differences and mental cruelty.

In this civil action, pursuant to *W.Va. Code*, 1931, 59-2-1, the petitioner filed an affidavit, wherein he stated that he was pecuniarily unable to pay the necessary fees and costs. Upon this basis counsel moved that service of process be accomplished by some means other than by publication, or that the costs of service by publication be paid by the county commission. The denial of that motion prompted this mandamus proceeding.

The petitioner here alleges that the denial of an alternate means of service of process and the refusal to direct the county commission to pay the cost of publication constitute, in these circumstances, a denial of access to the courts in contravention of Article III, Section 17 of the West Virginia Constitution and *W.Va. Code*, 1931, 59-2-1 and a violation of the due process clauses of the State and Federal Constitutions.

*W.Va. Code*, 1931, 59-2-1 provides, in part:

A poor person may be allowed by a court to sue or defend a suit therein without paying fees, or costs, whereupon he shall have from any counsel which the court may assign him and from all officers, all needful services and process, and also the assistance of witnesses, without any fees to them therefor, except what may be included in

the costs recoverable from the opposite party. A poor person, within the meaning of this section, shall be one who shall make and file in the court, or with the officer whose services may be demanded or required, an affidavit stating that he is pecuniarily unable to pay fees or costs, or counsel fees, and upon the filing of such affidavit in court or with any officer, then such officer shall perform any services required by law to be performed by him, as if the legal fees for such services had been paid.

Relying on the above quoted Code section and *Boddie v. Connecticut*, 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971), this Court has held that due process prohibits a state from denying, solely on the basis of financial inability to pay court fees and costs, access to its courts to indigents who, in good faith, seek judicial dissolution of their marriages. *Mars v. Luff*, Syllabus Point 3, 155 W.Va. 651, 186 S.E. 2d 768 (1972); *Humphrey v. Mauzy*, 155 W.Va. 89, 181 S.E. 2d 329 (1971).

In *Boddie v. Connecticut, supra*, welfare recipients residing in the State of Connecticut brought a class action challenging certain state procedures for the commencement of litigation, including required payment of court fees and costs for service of process which they alleged restricted their access to the courts in their effort to bring an action for divorce. The court found that the state's refusal to admit the appellants to its courts, the sole means in Connecticut for obtaining a divorce, was equivalent to denying them an opportunity to be heard upon their claimed right to a dissolution of their marriages, and was a denial of due process. In so holding, the Court struck down fee and cost requirements in divorce cases as a violation of due process where such fees prohibited indigent plaintiffs from obtaining a court hearing in their good faith actions. It found that although the State may select an alternate means, it could not require a means of service of process that would, in effect, prohibit the poor from access to its courts in divorce suits.

Agreeing, we adopt and apply this rationale to the case at bar. We also find that the petitioner's right is amply protected by the West Virginia Constitution.

Article III, Section 17 of the West Virginia Constitution provides:

> The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay.

This section of the Constitution guarantees that all litigants, regardless of financial ability, are entitled to equal access to the judicial system. In accord is the holding of *Linger v. Jennings*, 143 W.Va. 57, 99 S.E. 2d 740 (1957). There this Court refused to construe a statute providing transcripts to indigent defendants for whom counsel had been appointed to mean that indigents without such appointed counsel should be denied a transcript for purposes of appeal. Also in accord is the holding of *Rhodes v. Leverette*, ____ W.Va. ____, 239 S.E. 2d 136 (1977). There the Court held that an indigent criminal defendant who desires to appeal his conviction has a right under the due process and equal access provisions of our *Constitution*, Article III, Sections 10 and 17, to the effective assistance of court-appointed counsel on appeal. In *Dobbs v. Wallace*, 157 W.Va. 405, 201 S.E. 2d 914 (1974) the Court held that where a state statute permits a parolee to retain counsel to represent him at a parole revocation proceeding, the equal protection clause of the Fourteenth Amendment mandates that the parolee be informed that counsel will be appointed to assist him if he is pecuniarily unable to employ an attorney. The concurring opinion notes that the petitioner's right is also well protected by the equal access provision of our Constitution. In *State ex rel. Payne v. Walden*, 156 W.Va. 60, 190 S.E. 2d 770 (1972), this Court found that the double property value bond requirement of the statutory forthcoming bond procedure denied equal access to the courts to a person of low income, citing with approval Justice Brennan's concurring opinion in *Bod-*

*die, supra* as aptly stating the essence of the equal protection problem of a poor litigant:

> Where money determines not merely 'the kind of trial a man gets', Griffin v. Illinois, *supra*, . . . [351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891 (1956)], but whether he gets into court at all, the great principle of equal protection becomes a mockery. A State may not make its judicial processes available to some but deny them to others simply because they cannot pay a fee.

The equal access provision of our Constitution is unique to the jurisprudence of this State. *State ex rel. Reece v. Gies*, 156 W.Va. 729, 198 S.E. 2d 211 (1973), concurring opinion, Haden, J. The clear purpose of this provision is that this State may not make its judicial processes available to some but deny them to others simply because of impecunious circumstances. Our legislature has made several provisions whereby needy persons will be afforded the rights and privileges guaranteed to them by the United States and West Virginia Constitutions. For example, *W.Va. Code*, 1931, 51-7-7, as amended, provides that in any case where an indigent defendant has made a timely request for appeal, he shall be provided with a transcript at the State's expense. A needy person who is being detained by a law-enforcement officer, is under formal charge of having committed a serious crime, or is under a criminal conviction of a serious crime, is entitled to representation by an attorney, investigative services, and other services necessary to his defense including, but not limited to, attorney's travel expenses, transcripts, and expert witnesses at the state's expense. *W.Va. Code*, 1931, 51-11-3 and 8, as amended. However, the legislature has made no provisions to insure that the policy of *W.Va. Code*, 1931, 59-2-1 and the mandates of Article III, Section 17 of the West Virginia Constitution be carried out with regard to publication costs in divorce actions wherein the plaintiff files a poor person's affidavit.

In view of the foregoing we are of the firm opinion that the petitioner cannot be denied access to the courts

to pursue his divorce action solely because of his inability to pay the cost of service by publication. Although the legislature has not provided for the payment of such costs, other statutory declarations and constitutional mandates require us to take remedial action.

We therefore direct that payment for publication costs in the petitioner's divorce action be made by the director of the administrative office of the Supreme Court of Appeals.

*Writary awarded.*