THE STATE, EX REL. BLEVINS, *v.* MOWREY ET AL.

[Cite as State, ex rel. Blevins, *v.* Mowrey (1989), 45 Ohio St. 3d 20.]

(No. 88-1860—Submitted May 2, 1989—Decided August 23, 1989.)

*Southeastern Ohio Legal Services* and *Linda C. Kowieski,* for relator.

*Richard G. Ward,* prosecuting attorney, for respondents.

DOUGLAS, J. The issue before us is whether a writ of mandamus should issue compelling the respondents to effect service of process by publication in relator's divorce action without prepayment of the costs of publication.

Mandamus is an extraordinary writ that must be granted with care. In order for such a writ to issue, the relator must prove that "* * * (1) he has a clear legal right to the relief prayed for, (2) respondent is under a clear legal duty to perform the requested act, and (3) relator has no plain and adequate remedy in the ordinary course of the law." *State, ex rel. Liberty Mills, Inc.,* v. *Locker* (1986), 22 Ohio St. 3d 102, 103, 22 OBR 136-137, 488 N.E. 2d 883, 885, citing with approval *State, ex rel. Cody,* v. *Toner* (1983), 8 Ohio St. 3d 22, 8 OBR 255, 456 N.E. 2d 813, certiorari denied (1984), 466 U.S. 938.

In *Boddie* v. *Connecticut* (1971), 401 U.S. 371, indigent plaintiffs sought divorces, but were unable to pursue their actions because they could not pay the required court fees and service-of-process costs. The issue before the court was whether this denied the plaintiffs a right to be heard and was hence an infringement of their due-process rights.

In *Boddie, supra,* at 374, the court found that "* * * given the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit

a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages."

In *Torres* v. *Torres* (1982), 4 Ohio App. 3d 224, 4 OBR 414, 447 N.E. 2d 1318, the Court of Appeals for Cuyahoga County relied upon *Boddie, supra,* and held that a court clerk must pay a private publisher for the costs of service by publication in a divorce case when the plaintiff is indigent.

A contrary opinion, *Haynes* v. *Haynes* (Dec. 5, 1986), Ross App. No. 1275, unreported, denied an indigent divorce plaintiff's request to have service of process by publication effected without prepayment of the costs of publication by the indigent plaintiff. The Ross County court in *Haynes* found that *Boddie* explicitly limited its holding to its fact pattern, *i.e.,* a judicial waiving of court clerk's fees, and that it is "quite another thing" to require courts to pay public funds to private newspaper organizations in actions affecting marital rights which require service by publication. *Id.* at 5.

In the case now before us, the respondents, a judge and the Clerk of Courts of Ross County, argue that, based on the binding effect of *Haynes* on Ross County courts, the respondents have no legal duty to effect service of process without the relator's prepayment of the costs of publication.

Nevertheless, while *Haynes* has a persuasive effect on the Ross County common pleas court, this court has the constitutional authority, pursuant to Section 2, Article IV, Ohio Constitution, to " 'review, and affirm, modify or reverse the judgment of the court of appeals.' " *New York Life Ins. Co.* v. *Hosbrook* (1935), 130 Ohio St. 101, 30 O.O. 138, 196 N.E. 888, paragraph two of the syllabus. Thus, this court must determine the duty of the respondents and, concomitantly, the legal rights of the relator.

In this case, since the relator was unable to locate her husband, her only solution, to have her divorce proceeding go forward, was to give notice to her husband by publication. R.C. 3105.06[3] and Civ. R. 4.4. However, the relator has been found by the trial court to be indigent and she cannot afford to pay for service of process by publication. Thus, the relator is unable to proceed in her divorce action. This, in effect, denies the relator access to the courts, a denial which *Boddie* found to be an infringement of due-process rights. See, also, *Deason* v. *Deason* (1973), 32 N.Y. 2d 93, 343 N.Y. Supp. 2d 321, 296 N.E. 2d 229.

Accordingly, based on *Boddie,* we hold that an indigent plaintiff in a divorce action may require the appropriate public officials to effect service of process by publication in such action without prepayment by the indigent plaintiff of the costs of publication.

A legitimate question arises as to why the public should be required to pay the publication costs of an indigent divorce plaintiff. The General Assembly has not spoken on this issue, although R.C. 7.13 allows publication costs of certain required legal notices to be part of the costs in a case or proceeding, and R.C. 2323.31 allows a waiver of filing fees in a civil case. In

---

[3] R.C. 3105.06 states:

"If the residence of a defendant in an action for divorce, annulment, or alimony is unknown, or if the defendant is not a resident of this state or is a resident of this state but absent from the state, notice of the pendency of the action shall be given by publication as provided by the Rules of Civil Procedure."

addition, there is applicable authoritative case precedent.

This court in *Anderson* v. *Jacobs* (1981), 68 Ohio St. 2d 67, 22 O.O. 3d 268, 428 N.E. 2d 419, found that in a certain type of paternity proceeding the county should prepay blood grouping tests. These costs were to be added to the court costs. In *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6, 15 O.O. 3d 3, 399 N.E. 2d 66, the court mandated that appointed counsel and transcripts should be provided at public expense to indigent parents in a civil proceeding involving parental rights. *Heller* and *Anderson* implicitly involved court orders requiring the payment of public funds to private entities.

There is a further legitimate concern that requiring public entities to prepay publication costs may be too expensive. While a concern, this burden pales when compared with the alternative that poor litigants, unable to locate their spouses, would be denied access to our courts. Due process cannot be sacrificed on the altar of cost. Furthermore, these publication costs will be added to the court costs borne by the losing party.

The highest courts in a number of states have concluded that publication fees may not be assessed against indigent domestic-relations litigants.[4] Several courts, such as the Tennessee Supreme Court in *Dungan* v. *Dungan* (1979), 579 S.W. 2d 183, and the Washington Supreme Court in *Ashley*

v. *Superior Court* (1974), 83 Wash. 2d 630, 521 P. 2d 711, have devised substitute methods of service by publication in domestic relations cases filed *in forma pauperis* and established service at the defendant's last known address.[5] In *Boddie, supra,* at 382, the court allows for these alternative methods: "* * * We think that reliable alternatives exist to service of process by a state-paid sheriff if the State is unwilling to assume the cost of official service. This is perforce true of service by publication which is the method of notice least calculated to bring to a potential defendant's attention the pendency of judicial proceedings. See *Mullane* v. *Central Hanover [Bank &] Trust Co.* [(1950), 339 U.S. 306], *supra.* We think in this case service at defendant's last known address by mail and posted notice is equally effective as publication in a newspaper."

Relator has attached to a memorandum a proposal submitted to this court by the Legal Aid Society of Cleveland in 1980 for amending Civ. R. 4.4 to allow for less expensive, alternative forms of notice. The suggested amendment provides that, "[i]n divorce, annulment, and alimony actions, where the plaintiff is proceeding in forma pauperis and where the residence of the defendant is unknown to the plaintiff and cannot with reasonable diligence be ascertained, the clerk shall cause the complaint and summons to be mailed to the defendant's last known address by ordinary mail

---

[4] The highest courts in several states have concluded that publication fees cannot be imposed on indigent domestic-relations litigants. *Dungan* v. *Dungan* (Tenn. 1979), 579 S.W. 2d 183; *Johnson* v. *Stevens* (1980), 164 W. Va. 703, 265 S.E. 2d 764; *Ashley* v. *Superior Court* (1974), 83 Wash. 2d 630, 521 P. 2d 711; *Earls* v. *Superior Court* (1971), 6 Cal. 3d 109, 98 Cal. Rptr. 302, 490

P. 2d 814; *Thompson* v. *Thompson* (1972), 259 Ind. 266, 286 N.E. 2d 657; *Brown* v. *Brown* (1972), 112 N.H. 410, 296 A. 2d 898; and *Deason* v. *Deason* (1973), 32 N.Y. 2d 93, 343 N.Y. Supp. 2d 321, 296 N.E. 2d 229.

[5] *Dungan* also required that notice be posted in three public places.

and to be posted for six weeks in a conspicuous place in the courthouse. Service shall be complete when the clerk has entered on the record the fact that the complaint and summons have been posted for six weeks and mailed to the defendant."

Facially, this suggested amendment makes sense and, therefore, we refer this proposal to the Ohio Supreme Court Rules Advisory Committee to consider whether such an amendment should be adopted. As it stands today, however, service by publication is still required in Ohio under Civ. R. 4.4 and, thus, the relator in this case still must serve her husband by publication.

Based on the foregoing, we believe that respondents are under a duty to effect service of process by publication on relator's husband without requiring relator to prepay the costs of publication. Any other conclusion would afford indigent divorce plaintiffs in jurisdictions where the courts do their own notice publishing greater access to the judicial system than is afforded such parties in jurisdictions where the courts must rely on local newspapers. Further, if respondents have the duty to so proceed, it follows that relator has a clear legal right to the relief prayed for.

However, a writ of mandamus will not issue unless this court also finds that the relator does not have an adequate remedy at law. R.C. 2731.05.

In *State, ex rel. Liberty Mills, Inc.,* v. *Locker* (1986), 22 Ohio St. 3d 102, 104, 22 OBR 136, 137, 488 N.E. 2d 883, 885-886, this court stated that "* * * [f]or a remedy at law to be adequate, the remedy should be complete in its nature, beneficial and speedy. * * *" The relator contends that she has no speedy remedy at law. The May 2, 1988 entry which denied the relator's waiver of prepayment of publication costs is not a final appealable order. Thus, the relator argues that she will have to wait until Judge Mowrey issues a final order dismissing her divorce case before she can appeal his decision to the court of appeals.

Relator also contends the result of an appeal to the Court of Appeals for Ross County is preordained based on *Haynes*. In *Haynes,* the Court of Appeals for Ross County said it would adhere to its position denying the waiver of prepayment of publication costs until the United States Supreme Court or Ohio Supreme Court rendered an adverse decision.

Thus, since, in the opinion of the *Haynes* court, neither the United States Supreme Court nor this court has issued an opinion on this question, if this court refuses to issue a writ of mandamus and instead relegates the relator to proceeding with her appeal, it is clear that the Court of Appeals for Ross County will deny her appeal. Then the relator will appeal to this court, at which time, if we accept jurisdiction, we will again review this case. This is certainly not a speedy remedy as mandated in *Liberty Mills, supra.* Thus, we find that the relator does not have an adequate remedy at law.

Accordingly, we grant the requested writ of mandamus. Relator's motion for summary judgment is granted and respondents' motions for summary judgment and to dismiss are overruled.

*Writ granted.*

SWEENEY and H. BROWN, JJ., concur.

WRIGHT, J., concurs in the syllabus and judgment.

MOYER, C.J., and HOLMES, J., dissent.

RESNICK, J., dissents without opinion.

HOLMES, J., dissenting. The respondents in this matter should prevail upon either one of two legal points: upon procedural grounds or upon the merits. This is an original action in mandamus. The relator, a plaintiff in a divorce action now pending in the Court of Common Pleas of Ross County, seeks the order of this court compelling the judge and clerk of that court to effect service of process by publication without prepayment of the costs of publication and to add the costs to the costs of relator's divorce action.

It is well settled law in Ohio that:
"In order to grant a writ of mandamus, the court must find that the relator has a clear legal right to the relief prayed for, that the respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law." *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus; *State, ex rel. Halloran,* v. *Zapatony* (1984), 15 Ohio St. 3d 73, 15 OBR 166, 472 N.E. 2d 357.

It is respectfully submitted that these respondents have no clear legal duty to perform the requested acts. The precise issue presented to respondent Judge Mowrey had been addressed by the Fourth District Court of Appeals in *Haynes* v. *Haynes* (Dec. 5, 1986), Ross App. No. 1275, unreported. The court in *Haynes* adhered to its prior holdings and held that courts are not required to pay public funds to private newspaper organiza-tions in actions affecting marital rights requiring service by publication.

The decision of the court of appeals in *Haynes, supra,* is persuasive authority upon the Court of Common Pleas of Ross County. Therefore, the common pleas court in the Fourth Appellate District has no clear legal duty to effect the service of process by publication without prepayment of the costs of publication and to add the costs of publication to the costs of the divorce action.

These proceedings should be dismissed because the complaint fails to state a claim in mandamus against respondents upon which relief can be granted.

Second, the majority here strains mightily in extending the reach of the Due Process Clause to pay the costs of publication as an addition to court costs payable on behalf of indigents. The relator and this majority refer to the case of *Boddie* v. *Connecticut* (1970), 401 U.S. 371, as being in support of this proposition. That case, of course, in construing the due-process rights of an indigent litigant, dealt only with plaintiff's filing costs, not publication costs. In *Boddie,* it was held that due process prohibits a state from denying, solely because of inability to pay fees and costs, access to its courts to indigents who seek judicial dissolution of their marriage. *Boddie* did not reach the issue of whether public funds should be used to pay publication costs to private newspapers. The opinion in *Boddie* explicitly limited the scope of its holding, saying:
"In concluding that the Due Process Clause of the Fourteenth Amendment requires that these appellants be afforded an opportunity to go into court to obtain a divorce, we wish to re-emphasize that we go no further than necessary to dispose of the case before us, a case where the *bona fides*

of both appellants' indigency and desire for divorce are here beyond dispute. We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship." *Id.* at 382-383.

The Fourth District Court of Appeals, in following *Boddie,* noted that there was a split of authority in the courts whether to extend the holding in *Boddie,* but determined to follow what it had previously held in *Williams* v. *Williams* (1975), Ross App. No. 597, unreported, and *Newman* v. *Newman* (Dec. 12, 1981), Scioto App. No. 1347, unreported.

There is no current rule in Ohio which would require the payment of publication costs for a plaintiff proceeding as an indigent. If there is a rule change to accommodate such service it should logically be reviewed by the Rules Advisory Committee appointed by this court, and proper recommendation made to the court. Such a recommendation for an amendment to our Rules of Civil Procedure was made to this court by the Legal Aid Society of Cleveland in September 1980. Such recommendation would have added the following paragraph to Rule 4.4, Process: Service By Publication:

"* * *

"In divorce, annulment, and alimony actions, where the plaintiff is proceeding in forma pauperis and where the residence of the defendant is unknown to the plaintiff and cannot with reasonable diligence be ascertained, the clerk shall cause the complaint and summons to be mailed to the defendant's last known address by ordinary mail and to be posted for six weeks in a conspicuous place in the courthouse. Service shall be complete when the clerk has entered on the record the fact that the complaint and summons have been posted for six weeks and mailed to the defendant."

Such would seem to be a reasonable approach to the problems presented, but any such provision should be provided by rule change in the appropriate manner—not by opinion of this court.

There being no clear legal right for the issuance of the writ requested, the complaint should be dismissed.

MOYER, C.J., concurs in the foregoing dissenting opinion.